UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**ESTHER CATHERINE BOWLIN**                                                                 **PLAINTIFF**

**v.**                          **CASE NO. 3:08-CV-00029 BSM**

**ARKANSAS DEPARTMENT OF HEALTH;
DR. PAUL HALVERSON, Director of Arkansas
Department of Health, in his individual and official
capacities; HELEN BROWN, In-Home Service
Coordinator for Northeast Region of Arkansas
Department of Health, in her individual and official
capacities; and GEORGIA MURPHY, In-Home
Service Coordinator for Northeast Region of
Arkansas Department of Health, in her individual
and official capacities**                                                                          **DEFENDANTS**

**ORDER**

Before the court is the motion to dismiss and for summary judgment filed by defendants, Arkansas Department of Health ("ADH"); Dr. Paul Halverson, Director of Arkansas Department of Health, in his individual and official capacities; Helen Brown, In-Home Service Coordinator for Northeast Region of Arkansas Department of Health, in her individual and official capacities; and Georgia Murphy, In-Home Service Coordinator for Northeast Region of Arkansas Department of Health, in her individual and official capacities. Plaintiff Esther Catherine Bowlin ("Bowlin") responded and included Bowlin's affidavit, excerpts of the sworn testimony of Kelly Closson ("Closson") and Patty Miller ("Miller"), and excerpts of the depositions of Helen Brown ("Brown") and Georgia Murphy ("Murphy").

I.  STANDARD

Because the court is considering affidavits, exhibits, and other matters outside of the pleadings, the court will construe ADH's motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing

sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## II.  FACTUAL BACKGROUND

Bowlin worked as a home health nurse for the Arkansas Department of Health and its predecessor agency. Bowlin's job duties included making home visits to patients and instructing the patients' caregivers on patient care including wound dressing. A complaint was received from a patient's caregiver that Bowlin did not perform her job duties. Bowlin denied the allegation.

Specifically, on June 20, 2007, Bowlin made a home visit to a patient with a toe amputation. In her affidavit, Bowlin states that during the visit, she demonstrated to Closson, the patient's caregiver, how to properly dress the wound. Bowlin also states that she asked Closson if she felt okay dressing the wound, and Closson said, "yeah." Bowlin states that on June 21, 2007, she returned, but Closson had already done the dressing change. Bowlin states that she checked the dressing and toes, explained to Closson how to pack the wound with the supplies she brought with her, and that Closson declined her offer to demonstrate.

Miller testified that she later went to the same patient's home, and Closson informed her that during Bowlin's visit, Bowlin "just handed her the [dressing change] and said, you do it." Miller testified that Closson made a statement that "y'all ought to pay me 'cause I'm the one been doing the dressing job." Miller stated that when she observed the dressing by the caregiver, she noticed that the caregiver had forgotten a step, and then proceeded to

3

instruct the caregiver on how to properly dress the wound. Miller testified that she informed Closson that she could make a complaint to ADH. Miller stated that she had to take what Closson said into account because she was the "nurse going in there, and [she saw] no reason why this patient and the woman still lied," but that she previously had never seen any problems with Bowlin's nursing practices.

Closson testified that when Bowlin arrived on June 20, 2007, she only wrote down instructions on a piece of paper, gave her phone numbers, explained to her what to look for if the wound gets infected and that she should get the patient to a hospital. Closson stated that Bowlin gave her some gauze, tape, gloves, and other items, but that if Bowlin walked her through the process, she "just [doesn't] remember, 'cause [she] was trying to listen to her and then listen to what . . . the patient, all at one time." Closson also testified that Miller complimented her on dressing the wound, but that Miller informed her that she should be using sterilized strips, rather than gauze, to pack the wound. Closson stated that she learned how to dress the wound "from watching TV, doctors on TV, like the Discovery Channels and stuff." Closson also stated that on the second visit, Bowlin only gave her paperwork, and at some point, Bowlin may have checked the patient's blood pressure. Closson testified that although Closson currently takes certain prescription medication, at the time she was not taking those medications.

Bowlin states that on July 2, 2007, she arrived at work after a week-long vacation, and Murphy told her that a complaint had been made. It is undisputed that Bowlin's supervisors

investigated the complaint, and that Murphy, an In-Home Service Coordinator and Bowlin's direct supervisor, interviewed the patient's caregiver in person. In her deposition, Brown, another In-Home Service Coordinator, states that Bowlin told her that she could not remember if she had dressed the wound. According to Brown's deposition, Brown gave Bowlin a copy of documentation of the complaint, which states:

> On 062607, the supervisor received a complaint from the care giver a patient you seen on 062007 reporting that on the start of care visit you did not look at the wound on the left foot. When she (the care giver) stated that you made her day and you asked her why? She reported that you said you would not be doing the wound care, it was not your job it was hers. She stated you did not remove the dressing and did not observe her doing the wound care or tell her how to do it or anything about the foot. No instruction of medications was given.
>
> On your nurse's note dated 062007 you have documented wound measurements and that you observed the caregiver changing the dressing. You have documented medication instruction. The above behavior is viewed as falsification of a medical record. It is also viewed as damaging the reputation of ADH/IHS and failure to follow agency policy and procedure.

Brown testified that she allowed Bowlin up to 30 minutes to respond to the complaint, but, as reflected in the document attached to the deposition, Bowlin wrote, "This is untrue - I stand by what I documented." Brown testified, and documented, that Bowlin stated that she could not remember because she had been off for a week. It is undisputed that Bowlin's supervisor recommended termination of Bowlin for falsification of a medical record. Bowlin states that Brown gave her the option of resigning in lieu of termination. Bowlin resigned her employment in lieu of termination with the Department of Health on July 2, 2007, but states that at the time she did not know that this would make her ineligible for rehire within

ADH. A letter dated July 3, 2007, informs Bowlin that her resignation in lieu of termination constitutes gross misconduct, makes her ineligible for rehire within ADH, and is a reportable offense to the Arkansas State Board of Nursing. It appears to be undisputed that resignation limited Bowlin's appeal or administrative appeal process.

Bowlin states that she had held her position for almost twenty years. Bowlin states in her affidavit that the main purpose of her lawsuit is to have the falsification of medical records accusation removed from her record, and that she would like to be reinstated to her position with retroactive pay raises.

In her affidavit, Bowlin states that Murphy and Brown were looking for a reason to terminate her and wrote her up twice in 2006 "for running [her] mouth." Bowlin states she was written up for talking to the county judge about the location of the In Home Services office in the new facility. She states she was also written up when another employee overheard her say "that was mighty white of her." Bowlin states that the comment was made to a co-worker on her personal cell phone in her office with the door closed.

### III.  DISCUSSION

In her complaint, plaintiff Esther Catherine Bowlin ("Bowlin") alleges age discrimination in violation of the Age Discrimination in Employment Act (ADEA), violations of her due process rights under the Fourteenth Amendment and free speech rights under the First Amendment pursuant to 42 U.S.C. § 1983, and state law claims of libel and slander.

A.     ADEA Claim

Defendants assert that they are immune as state officials from the ADEA claim pursuant to *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Bowlin concedes her ADEA claim, and thus, summary judgment is appropriate as to that claim.

B.     State Law Claims

Defendants also assert that Bowlin's state law claims of libel and slander against Halverson, Brown, and Murphy, in their official capacities, and ADH are barred by the Eleventh Amendment. *See Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 447 (8 th Cir. 1995) (holding that the Eleventh Amendment bars suit against state agencies and state officials in their official capacities, and that the exception allowing prospective injunctive relief to be sought against state officials does not apply to state law claims against those officials). Bowlin does not address this assertion, or even discuss these claims, in response to the motion. Bowlin's state law libel and slander claims against Halverson, Brown, and Murphy, in their official capacities, and ADH are dismissed.

Defendants assert that Bowlin's state law claims against Halverson, Brown, and Murphy, in their individual capacities, are barred under statutory immunity pursuant to Arkansas Code Annotated § 19-10-305(a), which provides:

> Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Defendants state that the complaint does not allege that any defendant is covered by liability insurance. The court notes that there is no allegation by Bowlin that the actions taken by the individual defendants occurred outside their official duties. The court also notes that notice pleading is permitted under federal procedure, and thus, it was not necessary for Bowlin to plead detailed facts establishing malice. *Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 627 (8th Cir. 2001). Defendants assert, however, that there is not even a conclusory allegation that any of the defendants acted with malice.

The following elements must be proved to support a claim of defamation: (1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Northport Health Servs, Inc. v. Owens*, 356 Ark. 630, 641, 158 S.W.3d 164, 171 (2004). The court notes that Bowlin, once again, does not address the arguments regarding immunity in her response, and as such, does not refute the applicability of the immunity statute. Furthermore, Bowlin fails to point to the false statement or statements that she asserts constitute slander or libel or any publication of a statement. Bowlin's state law claims against Halverson, Brown, and Murphy, in their individual capacities, are dismissed.

C.    42 U.S.C. § 1983 Claims

As to Bowlin's 42 U.S. C. § 1983 claims, it does not appear that Bowlin disputes that ADH, as an agency of the State of Arkansas, is not a "person" subject to suit under 42 U.S.C.

§ 1983, and is immune from suit. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (holding that the Eleventh Amendment bars suit against agencies of the State of Arkansas, but plaintiff may seek equitable relief against state officials acting in their official capacities). Therefore, Bowlin's 42 U.S. C. § 1983 claims against ADH are dismissed.

Similarly, it does not appear that Bowlin disputes that Halverson, Brown, and Murphy are entitled to absolute immunity from suit for money damages in their official capacities pursuant to the Eleventh Amendment. *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007); *Murphy*, 127 F.3d at 754; *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Bowlin's claims for money damages against Halverson, Brown, and Murphy, in their official capacities, are dismissed. It does not appear, however, that sovereign immunity bars Bowlin's claim for prospective injunctive relief pursuant to section 1983. *See Dover*, 64 F.3d at 447 (holding that suit on the basis of federal law can be brought against state officials in their official capacity for prospective injunctive relief to which any state expenditures are merely ancillary); *Murphy*, 127 F.3d at 754.

Defendants also argue that the individual capacity defendants cannot be held liable because none are alleged to be Bowlin's "employer." Defendants, however, cite to cases noting the requirements in a Title VII case, and thus, the cases are inapposite.

Defendants further argue that the individual capacity defendants are entitled to qualified immunity as to the section 1983 claims. Section 1983 provides a cause of action against government officials who deprive persons of "rights, privileges, or immunities

9

secured by the Constitution." *Nelson*, 533 F.3d at 961 (citing 42 U.S.C. § 1983). In considering whether an officer is entitled to qualified immunity, the court determines whether the allegations amount to a constitutional violation, and whether that right was clearly established." *Id*. at 962. *See also Pearson v. Callahan*, No. 07-751, 2009 WL 128768, *9 (U.S. Jan. 21, 2009) (holding that the sequence of the *Saucier* two-part test is no longer mandatory). "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." *Id*. Qualified immunity is a question of law for the court. *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007). "Whether an official is entitled to qualified immunity depends upon the objective legal reasonableness of the official's actions assessed in light of the legal rules that were clearly established at the time of the actions in question." *Id*. (citing *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)) (internal quotation marks omitted).

"To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right." *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999).

Defendants assert that the facts of the case demonstrate that defendants' conduct toward Bowlin was objectively reasonable in light of clearly established law. Defendants state that upon receipt of a complaint from a patient's caregiver that Bowlin did not perform her job duties, they interviewed the caregiver in person. Subsequently, defendants informed

Bowlin of the investigation, and gave her the opportunity to respond. The results of the investigation led to the recommendation of termination, but in lieu of termination, Bowlin elected to submit her resignation.

Bowlin asserts that there is sufficient evidence that Brown and Murphy acted due to retaliatory motives, and that the right to be free from retaliation and the right to due process are well-established. Bowlin attempts to assert claims based on violations of her right to free speech, equal protection, and due process.

It appears that Bowlin may have abandoned any equal protection claim, as she has not set forth any substantive arguments in support of said claim, and the possible basis of any such claim is not clear. Regardless, Bowlin has not alleged or demonstrated that she is a member of a suspect class, that there is a fundamental right at issue, and has not identified any other person or class of persons similarly situated who have received different treatment. *See Geach v. Chertoff*, 444 F.3d 940, 945 (8th Cir. 2006). Bowlin's bare assertion that she has pled sufficient facts to support a claim based on equal protection is not sufficient to withstand summary judgment. Bowlin's equal protection claim is dismissed.

Bowlin asserts a First Amendment retaliation claim. To establish a First Amendment retaliation claim, Bowlin must prove that she engaged in protected activity and that this activity was a substantial or material factor in her employer's decision to take an adverse employment action. *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007).

Speech is protected if it relates to a matter of public concern, and Bowlin bears the burden of demonstrating that her speech is protected. *Id.*

Bowlin asserts that she was speaking on a matter of public concern, namely the construction of a public building. The court notes that Bowlin provides no details or context regarding the speech at issue or her reprimand, and thus, has not demonstrated that her speech was protected. Furthermore, Bowlin cannot show that this activity was a substantial or material factor in ADH's decision to take an adverse employment action. The facts demonstrate that the allegedly protected communications were made in 2006, and she resigned in July 2007. The timing of the recommended termination weighs against an inference of retaliatory intent. *Kilpatrick v. King*, 499 F.3d 759, 768 (8th Cir. 2007). Bowlin's belief that defendants acted from a retaliatory motive is insufficient. *Wilson v. Northcutt*, 441 F.3d 586, 593 (8th Cir. 2006). The court also notes that defendants have set forth a legitimate, non-retaliatory reason for the employment action, and Bowlin has failed to demonstrate pretext. *Hughes v. Stottlemyre*, 506 F.3d 675, 679 (8th Cir. 2007) (applying the three-part *McDonnell Douglas* test to a First Amendment retaliation case). Summary judgment is granted as to Bowlin's First Amendment retaliation claim.

Finally, it appears that Bowlin is attempting to assert that defendants violated her procedural due process rights. "To establish a violation of procedural due process, a plaintiff must show that [she] has been deprived of a constitutionally protected life, liberty, or

property interest." *Davenport v. Univ. Of Ark. Bd. of Trustees*, 553 F.3d 1110, 1114 (8th Cir. 2009).

Whether an employee's interest in her job rises to the level of a constitutionally protected property right is a question of state law. *Allen v. City of Pocahontas*, 340 F.3d 551, 555 (8th Cir. 2003). "Arkansas law recognizes two exceptions to the at-will employment doctrine: (1) where a personnel manual specifies that termination will only be for cause and (2) where the employment agreement itself specifies that termination will only be for cause." *Id*.

Here, Bowlin vaguely asserts that she has a protected property interest and that she is entitled to constitutional due process upon discharge. Bowlin also asserts that being given the option of resigning in lieu of discharge is essentially constructive discharge. Although Bowlin notes the existence of some exceptions to the at-will employment doctrine by citing cases from other circuits, she fails to provide any evidence that any such exceptions apply in this case. The court notes that defendants state in the heading to Section VI that Bowlin was an at-will employee. There is no evidence in the record establishing that Bowlin had a protected property interest in her job. Furthermore, it appears that Bowlin still holds her nursing license. *See Neal v. Fields*, 429 F.3d 1165, 1167 (8th Cir. 2005). The court cannot find that Bowlin has established that she had a constitutionally protected property interest.

Alternatively, Bowlin also asserts that when a government employee is discharged for reasons such as dishonesty, and the reasons are publicly announced, the employee is

potentially unemployable in the future.  Thus, Bowlin asserts that that employee may have been deprived of a constitutionally protected liberty interest.

Bowlin does enjoy a "protected liberty interest in [her] 'good name, reputation, honor, or integrity." *Eddings v. City of Hot Springs*, 323 F.3d 596, 601 (8th Cir. 2003) (citations omitted).  Bowlin fails, however, to present any evidence tending to demonstrate that public officials made untrue and stigmatizing statements about her to the public.  *Id*.  "To state a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation, it is necessary to show defamation by a state actor during the course of termination."  *Id*.  Therefore, summary judgment is appropriate as to Bowlin's due process claim.

Because the court finds that Bowlin's 42 U.S.C. § 1983 claims should be dismissed on the merits, any claim for prospective injunctive relief against defendants in their official capacity is denied.  Bowlin's complaint is dismissed with prejudice.

Accordingly, defendants' motion to dismiss and for summary judgment (Doc. No.20) is granted.  Bowlin's complaint is dismissed with prejudice.

IT IS SO ORDERED this 8th day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE